### John Ball et al. v. Otis A. Sieverling.

1. VERDICT—*when set aside as against the evidence.* A verdict which is manifestly against the weight of the evidence will be set aside on appeal.

Contested claim in court of probate. Appeal from the Circuit Court of Greene county; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the November term, 1905. Reversed and remanded. Opinion filed June 8, 1906. Rehearing denied December 12, 1906.

H. H. MONTGOMERY and EDWARD C. KNOTTS, for appellants.

RAINEY & JONES, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

Otis A. Sieverling filed a claim for the sum of $1,239 against the estate of William T. Witt, deceased, in the County Court of Greene county, where a trial was had and a judgment rendered in favor of the claimant in the sum of $100. An appeal was taken to the Circuit Court of said county where another trial was had and a verdict returned by the jury in favor of the claimant in the sum of $700. The Circuit Court ren-

dered judgment upon the verdict and the adminis-
trators appealed.

It appears from the evidence that William T. Witt,
deceased, was a man of considerable wealth, who
owned some horses that appellee, a blacksmith, shod
and at different times drove and handled. Appellee
claimed pay for such services, and also claimed that he
had never received any compensation therefor.

Several months after the death of Mr. Witt, appel-
lee presented his claim for such services, whereupon
appellants, as administrators of the estate, refused
payment and the trial and judgment before mentioned
followed such refusal.

The only question involved in this appeal, which we
deem necessary to discuss, is whether or not there is
sufficient evidence in the case to warrant the verdict
returned in favor of Sieverling.

We have examined the evidence carefully and are
constrained to hold that it does not justify the finding
returned by the jury, but that the testimony as a whole
greatly preponderates in favor of appellants, and is
seemingly conclusive, to the effect that appellee was
to make no charge for the services for which he now
brings suit.

Appellee's claim as presented began to run in April,
1897, and continued to the time of the death of Witt
in January, 1902, during all of which time Witt and
Sieverling were neighbors and often in each other's
company.

Deceased was a very careful and thorough business
man, prompt in the payment of his debts, who through
life had ample means at his disposal, and at his death
left a large estate, his personal property alone amount-
ing to about $30,000 of which sum about $12,000 was in
cash. He bred and raised horses, and appellee, who
was a man of small means, with an income not exceed-
ing six or eight hundred dollars per year, drove and
trained some of them.

About two years before the death of Witt and

nearly three years after the account was first opened, as claimed by appellee, and when there was an amount largely in excess of $300 due upon it, appellee and his wife borrowed $300 from Witt at seven per cent. interest and gave their note for the amount. Interest and partial payments were made upon this note.

This proceeding is very unnatural upon the part of a man situated as appellee was, if the claim he now presents has any merit whatever. If Mr. Sieverling had an account against Mr. Witt there was no time, under the evidence, from the inception to the close of the account when Sieverling could not have obtained payment of it upon presentation thereof to Mr. Witt, —a thing that would reasonably be expected, rather than the making of a note drawing interest at seven per cent. during the very period of time when his own money due and unpaid upon his account was lying idle in the hands of the man to whom he made the note. This action upon the part of appellee is not sufficiently explained by him in his assertion that the note for $300 was the note of his wife, as it appears from the evidence that he negotiated the loan, received the check for the money for which the note was given, and in a general way so demeaned himself as to make the loan appear consistently to be his own. This act of borrowing under those circumstances from the man whom he now claims was his debtor raises a strong presumption that he had been compensated in some way by Witt, or that he never intended to make any charge for his services. Seacord v. Matteson, 56 Ill. App. 439.

It furthermore appears from the evidence that at the time of the sale of the personal property belonging to the estate of William T. Witt, appellee was present and bought a horse called "Billy Witt" for the sum of $250, for which he made payment by taking credit for a half interest he claimed in two other horses sold at the same time and by drawing his check for $28.80 in favor of the administrators, without in any way in-

forming them that he had any claim for caring for and driving the identical horse he so bought.

It furthermore appears from the evidence that appellee made no claim whatever upon the estate for payment of his bill for nearly eighteen months after the death of Mr. Witt. That at about the expiration of that time the administrators instituted suits against him and his wife to recover the balance unpaid upon the note for $300 and that within a very few days after the commencement of that suit appellee, for the first time, presented the claim involved in this proceeding.

Appellants contend that appellee in driving the horses of deceased, was keeping them for the use he could make of them while in his charge, and in this contention they are supported by the testimony of several witnesses who stated that appellee said to them that "He (appellee) had these horses for the use he could make of them." That he did make some use of the horses while in his care, is fully established, while he used and drove some of them as though they were his own. Some he became greatly interested in, especially "Billy Witt," which he bought at the administrator's sale for less than half what he charged the estate for shoeing, training and breaking the same horse.

Furthermore both John and George Ball, the administrators, testified that not long after they were appointed as such administrators they went to the shop of appellee and asked him if he had any account against the estate of deceased when he said to them that he did not; that he, deceased, did not owe him one dollar.

Appellee denied having made this statement, and also denied having stated to Kenyon, Montgomery, Henry Witt and Allen Ball that he was to keep any of the horses for their use; but the conduct of appellee during the time the account sued for was running, in borrowing money from deceased and making partial payments thereon, in allowing the account to run for so long a time before Witt's death uncalled for, in de-

laying the presentation of his claim for so long a time after Witt's death, while he was paying interest to the estate, is so inconsistent with the claim now made, that he expected to be paid for the services, that we feel fully warranted in saying that no recovery should be had by him upon this record.

The verdict returned by the jury was against the manifest weight of the evidence and should have been set aside.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*